933 F.2d 1009
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Neal W. ROLAND, Plaintiff-Appellee,
v.
Perry JOHNSON, Thomas Phillips, Dale Foltz, Bernie Toland,
Defendants-Appellants.
 No. 90-1343.
 United States Court of Appeals, Sixth Circuit.
 May 22, 1991.
 
 Before BOYLE F. MARTIN, Jr. and RALPH B. GUY, Jr., Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This case has been before this court before at the summary judgment stage. See Roland v. Johnson, 856 F.2d 764 (6th Cir.1988). The district court initially dismissed Neal Roland's claims, but this court reversed its judgment and remanded the case. The case proceeded to trial where Roland prevailed. Defendants now appeal, asserting (1) they were entitled to qualified immunity; (2) the district court erred in entering judgment in plaintiff's favor, in admitting certain Department of Justice and police reports, and in instructing the jury; and (3) this action is barred by the eleventh amendment. We believe these arguments to be meritless and thus affirm the judgment of the district court.
 
 
 2
 Roland was twenty-four years old and a prisoner in the State Prison of Southern Michigan when, on November 30, 1983, he was raped by Frankie Lee Weatherspoon. Daniel Perry acted as a lookout for Weatherspoon during the rape. Roland was in prison for breaking and entering and had no history of assaultive or violent behavior, thus he was classified as requiring only medium custody. Around eight months before the rape, Roland became eligible for transfer into another prison, but remained in the Southern Michigan prison because of a medical problem.
 
 
 3
 Weatherspoon is serving life without parole for murder. Daniel Perry is incarcerated for first degree criminal sexual assault and armed robbery. Each required close custody.
 
 
 4
 Despite their different custody levels, Roland, Weatherspoon, and Perry were all housed in 11 Block, an honor block. This aberration resulted from the August 1983 change in 11 Block from close custody to medium custody and the retention of certain close custody inmates, including Weatherspoon and Perry, in the block. In theory, the honor block was to operate as a reward for inmates like Roland who had good prison records, giving such prisoners more privileges, including more out-of-cell time and reduced guard oversight.
 
 
 5
 Perry and Weatherspoon were "block help" or "porters"; this allowed them to be let out of their cells prior to other inmates. Weatherspoon was also a "breakman"; this gave him the ability to open the cells of other inmates. Prison officials awarded Perry and Weatherspoon these positions despite documentation of their aggressive predatory behavior. Prison authorities investigated 11 Block in January of 1983 and in November of 1983, soon before the rape. The investigations disclosed the existence of pressure from gangs of homosexual predators and the November investigation revealed specific instances of sexual misconduct by both Weatherspoon and Perry.
 
 
 6
 Roland brought this Sec. 1983 suit against Perry Johnson, the Director of the Michigan Department of Corrections; Dale Foltz, the Warden of the prison; Thomas Phillips, Foltz's Administrative Assistant; and Bernard Toland, the Director of Job Classifications for the prison, alleging these defendants violated his rights under the eighth and fourteenth amendments by subjecting him to a pervasive risk of harm. The opinion of this court reversing the district court's grant of summary judgment aptly sets forth the facts each defendant was alleged to have known at the time of the rape. Roland, 856 F.2d at 766-767. We noted that the appropriate standard for violation of the eighth amendment was " 'deliberate indifference' to a risk of injury to the plaintiff," id. at 769, and we decided that if the jury believed Roland's evidence, each defendant could be found to have been deliberately indifferent to Roland's right to reasonable protection from sexual assault. Id. at 770. We will not repeat that analysis here, rather we limit our discussion to those issues the defendants raise on this appeal.
 
 
 7
 The defendants first assert they are entitled to qualified immunity and, thus, can not be found liable. The law of qualified immunity has developed in order to serve two prominent competing interests: the maintenance of constitutional guarantees and the need to avoid hindering the work of public officials. See Forrester v. White, 484 U.S. 219, 223 (1988); Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982). "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818.
 
 
 8
 In Anderson v. Creighton, 483 U.S. 635 (1988), the Supreme Court refined the qualified immunity test developed in Harlow. The Court held that the "objective legal reasonableness" of the official's action is to be determined by assessing the action "in light of the legal rules that were 'clearly established' at the time it was taken." Id. at 640. It was clearly established in 1983 that prison officials' deliberate indifference to an inmate's safety as threatened by the violent attacks of other inmates, including rape, violated the Constitution. See Stewart v. Love, 696 F.2d 43, 44 (6th Cir.1982) (per curiam); Little v. Walker, 552 F.2d 193 (7th Cir.1977), cert. denied, 435 U.S. 932 (1978); Holt v. Sarver, 442 F.2d 304 (8th Cir.1971); Woodhous v. Virginia, 487 F.2d 889 (4th Cir.1973); Parker v. McKeithen, 488 F.2d 553 (5th Cir.), cert. denied, 419 U.S. 838 (1974). Accordingly, defendants' claim of qualified immunity is without merit.
 
 
 9
 The defendants next assert the district court erred in entering judgment in Roland's favor. After the district court gave its instructions, it gave the jury separate verdict forms for each defendant. The upper part of the forms addressed the plaintiff's constitutional claims, while the lower part of the forms addressed a state law nuisance claim. When the jury returned its verdict, it had only completed the upper part of each form. This omission was not discovered until after the court met with the jury, and the district court then ruled that a mistrial should be declared as to the undecided state law claim. The defendants argue that the declaration of a mistrial as to Roland's state law claim justifies a setting aside of the judgment on his constitutional claim. We disagree. The jury returned a verdict as to Roland's constitutional claim. Where a jury returns a verdict form which fully resolves some of the claims, judgment may be entered on those claims. See Iacurci v. Lomas, 387 U.S. 86, 88 (1967).
 
 
 10
 The defendants next assert the district court erred in admitting a 1973 Michigan State Police report from an investigation into homosexual violence in the State Prison in Southern Michigan and a 1982 United States Department of Justice report from an investigation of conditions at three Michigan prisons, including the Southern Michigan prison. A trial court will not be reversed for admitting evidence unless it clearly abused its discretion. Conklin v. Lovely, 834 F.2d 543, 551 (6th Cir.1987). The district court found the police and Justice Department reports would be helpful to the jury in determining whether the defendants acted with deliberate indifference. The State Police report was the result of an investigation into sexual assaults in the prison system. The Department of Justice report was the result of an investigation into conditions of confinement at three Michigan prisons, including the Southern Michigan prison. Each was admissible under Fed.R.Evid. 803(8)(C) as a public report "made pursuant to authority granted by law...." See Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988). The admission of these reports did not constitute an abuse of discretion.
 
 
 11
 The defendants also assert the district court erred in refusing to give three of its requested instructions. Jury instructions are reviewed as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision. Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-11 (6th Cir.1987). In this case, the jury instructions stated all the principles of law that were necessary to guide the jury. The instructions were not erroneous.
 
 
 12
 Lastly, the defendants assert the eleventh amendment bars this action. This claim is also without merit. When an officer acts in violation of the Constitution, he "is stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart him any immunity from responsibility to the supreme authority of the United States." Ex Parte Young, 209 U.S. 123, 159-160 (1908).
 
 
 13
 For the foregoing reasons, the judgment of the district court is affirmed.