**WELCH & CORR CONSTRUCTION COR-
PORATION, Plaintiff, Appellant,**

v.

**Harris E. WHEELER, Jr., et al.,
Defendants, Appellees.**

**No. 72-1294.**

United States Court of Appeals,
First Circuit.

Submitted Nov. 8, 1972.

Decided Dec. 5, 1972.

Richard B. Couser, Concord, N. H., on
brief for appellant.

Before McENTEE, ALDRICH and
CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit
Judge.

Welch & Corr Construction Corp.
("Contractor") appeals from a judgment
in its favor against Harris E. Wheeler,
Jr. and Wayne V. Wheeler, d/b/a Wheel-
er Bros. ("Subcontractor"). The sole
issue is whether the district court erro-
neously understated Contractor's total
damages by $4,778.84.

At a jury-waived trial, Contractor es-
tablished that it had contracted with
Subcontractor for the latter to complete
the site work at a new high school. The
initial contract called for payment by
Contractor to Subcontractor of $40,000,
it being then understood that Subcon-
tractor would not be required to com-
plete certain work on the athletic fields.
When the contract price was later
amended to $45,000, Subcontractor
agreed to complete the athletic field
work also.

Having found that Subcontractor com-
mitted a material breach of the contract,
the district court, to compute damages,
had to determine how much it cost Con-
tractor to complete the work after Sub-
contractor had defaulted. It was in so
doing that the court allegedly erred:
Contractor asserts that it should have
been allowed $14,044.73 for its labor
costs, not the $9,265.89 found by the
court.

Appellant recognizes that, to
prevail, it must establish that the find-
ings below were "clearly erroneous".

F.R.Civ.P. 52(a). It says the court clearly erred by assuming, as stated in its findings, that certain time cards in evidence were a complete record of the labor costs incurred. (The $9,265.89 was calculated directly from the cards.)

Appellant points to relevant portions of the testimony as indicating that only time cards applicable to labor for completion of work covered by the initial $40,000 contract were put in evidence. Appellant's total labor costs for completion of the entire $45,000 amended contract are said to be reflected in the testimony of its president, Mr. Welch. He testified they were $14,044.73.

To hold that a district court's finding of fact was "clearly erroneous", we must, from the record, be left "with the definite and firm conviction that a mistake has been committed." United States v. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We are not so convinced.

■■ The record strongly suggests that, in relying upon the time cards as the evidence of labor costs, the district court simply rejected Mr. Welch's testimony that labor costs totalled $14,044.-73. The district court was aware of Mr. Welch's testimony, as indicated by the court's express reference to it in the finding, but credited only the time card evidence showing $9,265.89, explaining:

"Presumably time cards were kept for all work on the project, and they could have been offered at the trial."

A district court's evaluation of the strength and quality of all the evidence, especially that presented in live testimony subject to cross examination, is entitled to great weight. Were we to substitute $14,044.73 for the trial court's finding, we would to a considerable degree be overruling its evaluation of the credibility of a witness's testimony, something an appellate court should rarely do.

It is true that the district court also said that it assumed that the cards offered were a complete record of the labor costs incurred. But even if this were taken to be the sole basis of its finding, appellant has not convinced us that the court committed plain error. It could be inferred from Mr. Welch's beginning testimony that he had all the relevant cards with him for reference, and the record is at least ambiguous as to what, if anything, he had left over after the cards went into evidence. If there were other records, appellant should have offered them or at least advised the court unmistakably of their existence.

Finally, we note from the docket that Rule 52(b) or 59(e) motions were not filed requesting the district court to reconsider and, if so minded, amend its finding in light of appellant's present complaint. It would have been better practice to have filed such a motion. In Braunstein v. Massachusetts Bank & Trust Co., 443 F.2d 1281 (1st Cir. 1971), we stated that a party who wished to object to the size of a jury verdict should first do so by motion in the district court. This is not entirely the present question, but it is related. At least an objection affords the district court an opportunity to assist us by furnishing its views, if it has something relevant to contribute. Further, until objection is made, the court may not realize that the losing party believes it has a valid complaint. Calling the matter to the attention of the district court might entirely obviate the need of an appeal.

■ Our comments should not be misconstrued as requiring the routine filing of post-judgment motions. Obviously, there are many cases—perhaps most—where it would be unrealistic to expect the district court, having decided the case, to reconsider it. However, the nature of the present complaint best lent itself to evaluation by the court which heard the evidence. If, as appellant contends, the district court in the course of a reasonably complex accounting simply failed through inadvertence to understand one aspect of the appellant's case, it seems only sensible that the alleged mistake should be taken up directly with the court. The court was in a far better

position than are we to know the considerations underlying its own findings. It is for precisely such situations that the Rules allow the making of post-judgment motions.

Affirmed.